UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| BETTER DAYS AHEAD OUTREACH, INC., et al., | : : : | |
| Plaintiffs, | : : | No. 2:23-CV-04234 |
| v. | : : | JURY TRIAL DEMANDED |
| POTTSTOWN BOROUGH, | : : | |
| Defendant. | : : | |

## ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of Plaintiffs' Motion for Preliminary Injunction and the Borough of Pottstown's Response in Opposition thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **DENIED**.

BY THE COURT:

_____
The Honorable Mia Roberts Perez

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETTER DAYS AHEAD OUTREACH, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> POTTSTOWN BOROUGH, <br><br> Defendant. | No. 2:23-CV-04234 <br><br> JURY TRIAL DEMANDED |

**DEFENDANT BOROUGH OF POTTSTOWN'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Borough of Pottstown, by and through its undersigned counsel, Siana Law, LLP, hereby responds in opposition to Plaintiffs' Motion for Preliminary Injunction and in support thereof, avers as follows:

I. **INTRODUCTION**

The Borough of Pottstown ("Pottstown") has experienced increasing complaints regarding the homeless individuals unlawfully encamping on the shores of the Schuylkill River between Schuylkill River Trail and the Schuylkill River. ("River Encampment")  The property, owned by Pottstown, is located in a flood way, subject to FEMA requirements, making it vulnerable to severe flooding during extreme weather that could endanger persons and property.  Plaintiffs request this Court to issue Injunctive Relief that would stop Pottstown from requiring the inhabitants of the River Encampment to vacate the area unless it provides alternative housing.  Plaintiffs cannot succeed on the merits of their claims and further, Pottstown has offered and continues to offer options and like accommodations to individuals and storage for homeless individuals' possessions.  Accordingly, this Court should reject Plaintiffs' Request for Injunctive Relief.

II.     PROCEDURAL HISTORY

Plaintiffs, Beltran, Wanner, and Better Days Ahead Outreach, Inc., filed a Complaint against Pottstown for Declaratory and Injunctive Relief based upon claimed violations of their Eighth and Fourteenth Amendment ("State Created Danger") rights. (ECF 1)  On the following day, Plaintiffs filed a Motion for Preliminary Injunction seeking to preclude Pottstown from closing a homeless encampment and to affirmatively require Pottstown to provide alternative shelter, which is denied. (ECF 4)

Pottstown intends to file a Motion to Dismiss by November 24, 2023, the date set for a response seeking dismissal of all claims.

Pottstown files this Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction. Hearing is scheduled for November 16, 2023 at 10:00 AM.  Pottstown reserves the right to supplement this filing, if warranted, following the Court Ordered Hearing.

III.    FACTUAL SUMMARY

In summer of 2023, Pottstown became aware of an encampment of homeless people that formed along the riverbank of the Schuylkill River at or about the area of the Schuylkill River Trail ("River Encampment").  Attached hereto are photographs of the River Encampment as taken from the website of Plaintiff, BDA, cumulatively marked Exhibit "A".

Pottstown owns the property where the River Encampment is located, which consists of a wooded, vegetative site. It is not part of Pottstown's park system. Furthermore the River Encampment is located in a floodway area as designated by the Federal Emergency Management Agency (FEMA).  This is a low-lying area that is most susceptible to serious and frequent flooding.  As a result, FEMA requires all municipalities to enact ordinances prohibiting development and/or improvements (structures) in these zones, as damage could be caused when carried away by flood waters.  Prohibited in the Floodplain Conversation District, among other

3

things include "No new construction, alteration, or improvement of buildings or any other type of permanent structure including fences, shall be permitted in the floodway or the one-hundred-year floodplain." Pottstown Ordinance; Chpt. 8, §502 (A).  Flooding in the low-lying floodway zones can be caused both by heavy rain events and by rapidly melting snow during winter storm events.

Since late-September 2023, Pottstown staff, along with the Police Department have been verbally notifying the occupants of the River Encampment that they should relocate for their safety.  The property was posted with notices and flyers regarding that issue.  (See, ECF 4-8).

On October 5, and as revised on October 13, 2023, notices were posted along the River Encampment area advising individuals they are not permitted to use the property, such as to erect a tent, encampment, or other structure after December 1, 2023.  As specifically set forth in the Notice:

> For your personal safety, occupying this location is not permitted.  This is private property of the Borough of Pottstown and is located in a floodway, making it vulnerable to severe flooding during extreme weather that could endanger persons and property.

(ECF 4-8).

Within the Notice, Pottstown provided telephone numbers to reach should individuals need help finding alternative shelter, storage, medical systems, treatment, or other resources. Furthermore, the Notice specifically provided that thirty (30) day storage of non-hazardous personal items would be provided by the Borough and must be coordinated by 2-1-1 before December 1, 2023.  At present, no members of the River Encampment have sought storage of non-hazardous personal items.

The Police Department has not issued citations to the River Encampment inhabitants or

4

attempted to relocate or "sweep[1]" any of the encampments unless the owner of private property requests police assistance. Pottstown and the Police Department work closely with Access Services, Beacon of Hope, Montgomery County, Veterans Affairs, and other service providers; in addition to having daily contact with the River Encampment inhabitants. No arrests have been made as to any River Encampment inhabitant for trespassing on Pottstown's property. If any arrests have occurred in the River Encampment, they were based upon existing warrants or the commission of a crime, including illegal drug dealing or unlawful weapon possession. Furthermore, there have been no arrests or threatened criminal citations regarding the inhabitants of the River Encampment for sleeping or camping outside.

Pottstown has attempted to work with Beacon of Hope regarding the availability of warming beds through the winter months. In addition, Pottstown has had discussions with Norfolk Railroad who has private property in which there is already a homeless encampment and existing and Norfolk Southern has no objection to additional habitants of that encampment. The Norfolk Southern Property is on the other side of the Schuykill River Trail, out of the floodway.

### IV.   LEGAL STANDARD

Plaintiffs seek injunctive relief to stop Pottstown from closing the River Encampment, requiring the inhabitants to relocate. To be successful, a party moving for injunctive relief must demonstrate (1) a reasonable likelihood of success on the merits; (2) irreparable harm to the plaintiffs/applicants; (3) whether the denial of injunctive relief would injure the plaintiffs more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve public interest. *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018), cert. denied, 139 S.Ct. 440 (2018). This Circuit has held that because the first two factors are prerequisites for

---

[1] Plaintiffs repeatedly use the word "sweep", without definition. Pottstown is unaware what this term means as referenced by Plaintiffs.

5

a movant to prevail, the Court need not reach the third and fourth factors if it determines that a plaintiff has failed to establish a reasonable likelihood of success on the merits or irreparable harm to the applicant. See, *Holland*, supra.

For the reasons set forth herein, there is no likelihood of success on the merits as to the asserted Eighth Amendment and State Created Danger claims, nor any irreparable harm if injunctive relief is denied.

V.   ARGUMENT

A. Better Days Ahead Lacks Standing

Better Days Ahead Outreach, Inc. ("BDA"), is a non-profit organization organized under the laws of Pennsylvania whose mission is to aid unhoused residents in Pottstown and other Southeastern Pennsylvania municipalities. (Compl. ¶5).  BDA is an entity and does not reside at the encampment.  Therefore, it lacks standing to pursue any claims for relief.  Plaintiffs rely upon *Havens Realty Corp. v. Forman*, 455 U.S. 363 (1982) for the proposition that it has organizational standing to assert constitutional violations.  This is incorrect.  The standing provided in *Havens Realty Corp.* was based upon statutory authority of the Fair Housing Act and specifically analysis pursuant to § 812 of the Fair Housing Act.  Plaintiffs do not assert a claim pursuant to the Fair Housing Act (nor can they as this is not a rental or purchase). Therefore, statutory authority that permitted standing in *Havens Realty Corp.* is non-existent here.  As specifically noted:

> In determining whether HOME has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: has the plaintiff 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of Federal Court jurisdiction?

*Havens Realty Corp.* at 378-379.

The Court concluded that based upon HOME's allegations of injury, they had standing pursuant to the statutory language of the Fair Housing Act.  As BDA's claims are not based upon

6

violations of the Fair Housing Act, BDA lacks standing to pursue its claims.

### B. Any Relief if Ordered (Denied) is Limited to the Named Plaintiffs

Plaintiffs Beltran and Wanner claim to be unhoused Pottstown residents living at the River Encampment. (ECF 4, ¶2). No class action has been certified pursuant to F.R.C.P. 23 and the only individuals claiming to be unhoused plaintiffs residing at the river encampment are Mr. Beltran and Mr. Wanner. Accordingly, even assuming the Court grants the relief, which is denied, it only extends to the named Plaintiffs and no other individuals at the River Encampment.

### C. Plaintiffs Fail to Meet the Necessary Requirements for Injunctive Relief

#### 1. No reasonable likelihood of success on the merits.

##### a. No *Monell* Claims are Alleged Nor Viable

In order to establish municipal liability pursuant to § 1983, Plaintiffs must demonstrate that Pottstown (a municipality), through implementation of a policy, custom, or practice, caused an underlying Constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658 (2018). There can be no *Monell* claim in the absence of an underlying violation of civil rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006); and *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989.) Stated another way, Pottstown cannot be liable under *Monell* unless one of its employees is primarily liable under §1983. *Id.*

A review of the Complaint fails to reveal any allegations of policy, custom, or practice causing constitutional violations as to the Plaintiffs; nor has an individual been named as a defendant. (See, Cmplt., ECF 1). Therefore, no underlying allegations of individual civil rights violations have been pled; nor can any violation be proven. As a matter of law, Plaintiffs cannot be successful in the claims as pleaded – against Pottstown only; and as such, there is no likelihood of success, requiring This Court to deny any injunctive relief.

7

b. <u>Eighth Amendment Claim is Not a Viable Cause of Action</u> (Count 1)

Plaintiffs assert a claim for cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution. However, the Third Circuit has not expanded an Eighth Amendment violation based upon the facts presented by Plaintiffs who are neither pre- or post-trial detainees; nor have been issued any criminal citations.

Plaintiffs' reliance on a Ninth Circuit case where individual campers were cited for violating an anti-camping ordinance is misplaced; and neither precedential nor persuasive. Furthermore, no inhabitants of the River Encampment have been cited or arrested for housing themselves on Pottstown's property.

In an effort to overcome the lack of Third Circuit precedent for an Eighth Amendment claim, Plaintiffs cite to *Murray v. City of Philadelphia* <u>implying</u> that a city must demonstrate "immediate available housing for encampment residents" before closing an encampment. *Murray v. City of Philadelphia*, 481 F.Supp 3d 461,475 (E.D. Pa. 2020). However, a review of *Murray* **fails to reveal any Eighth Amendment reference or analysis** and therefore, has no precedential or persuasive value to support Plaintiff's Eighth Amendment Claim.

In fact, the subject Notice (ECF 4-8) provided at or near the River Encampment fails to indicate that failure to vacate would result in an arrest. Rather, the Notice provides telephone numbers to speak with individuals to assist with resources and services; and provides thirty (30) day storage of non-hazardous personal items. Likewise, no arrests have been made.

Plaintiffs' reliance upon *Phillips v. City of Cincinnati* is also misplaced. In the *Phillips* matter, plaintiffs claim that defendants' "policy and custom" of making homeless encampments illegal throughout the City of Cincinnati violated their constitutional rights. See, *Phillips v. City of Cincinnati*, 2020 WL 4698800 (S.D. Ohio August 13, 2020). Plaintiffs herein have not asserted a *Monell* claim or asserted facts supporting that Pottstown has a policy or custom of criminalizing

8

homelessness, destroying property, or banning encampments.[2]

        c. The State-Created Danger Claim (14th Amendment) Fails (Count Two)

In general, the state owes no affirmative duty to protect citizens from harm. *DeShaney* at 95-96 (1989). A four part test determines whether the Pottstown's intended actions constitute a state-created danger: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that he/she was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; **and** (4) the state actor affirmatively used his/her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013). Plaintiffs fail to meet any of the four prongs, requiring This Court to deny Plaintiffs' request for injunctive relief.

More succinctly, under a state-created danger theory, the state may be subject to liability when it "acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003).

As noted by Judge McHugh of the Eastern District dismissing a state created danger claim in a matter evicting homeless persons who occupied property owned by the Philadelphia Housing Authority ("PHA"):

> And the state-created danger doctrine provides a narrow path for establishing a due process violation. The Supreme Court has made clear that the Due Process clause "generally confer[s] no affirmative right to government aid, even where such aid

---

[2] As previously noted, all claims must be dismissed as a matter of law as no underlying Constitutional violation has been alleged against any individual, nor has a custom, policy, or practice been asserted against the Pottstown to support a *Monell* claim. .

9

may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County. Dep't of Social Servs.*, 489 U.S. 189, 195-96, 202 (1989). *See also Lindsey v. Normet*, 405 U.S. 56, 74 (1972) ("[w]e do not denigrate the importance of decent, safe and sanitary housing. But the Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality."

*Honkala v. U.S. Department of Housing and Urban Development*, 2022 WL 282912 (E.D.Pa. 1/31/2022), a copy of which is attached hereto marked Exhibit "B". In *Honkala*, the Court dismissed Plaintiff's claims determining it did not establish a state created danger for removal homeless persons from a PHA owned property.

### 1. No Foreseeability.

To adequately establish foreseeability, Plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips* v. Allegheny County, 515 F.3d 224 at 238. Significantly, "[s]tate actors are not liable every time their actions set into motion a chain of events that result in harm." *Henry at* 283. If the connection between the action and the harm is "too attenuated . . . to support liability," there is no foreseeability. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). There must be a specific harm to a specific individual that was foreseeable. *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996).

Here, Pottstown requests the inhabitants of the River Encampment move to another location for their health, welfare and safety rather than residing in a dangerous floodway. It is not foreseeable that any harm would come to them for relocating from the River Encampment, where they are provided contacts for resources; and alternative sites for housing. As Judge McHugh also noted in *Honkala*,

> In addition, it cannot be said that the City's conduct rises to the level of outrageous behavior that shocks the conscience. Homelessness has proven to be an intractable problem, and there is much to criticize in the failure of government at every level to address it more effectively. If habitable properties reserved for public housing

10

> are not being used to shelter families in the midst of a deadly pandemic, there is a strong argument that this is a failure of public policy. But such a shortcoming would at most constitute negligence.

Honkula at *.10   Like in *Honkula*, Pottstown's efforts requesting inhabitants to relocate – although denied – would at most would constitute negligence, insufficient to establish a civil rights violation.

### 2.  No Conscious Shocking Conduct.

The second element requires a plaintiff to sufficiently plead facts to establish that "a state actor acted with a degree of culpability that shocks the conscience." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).  The Supreme Court has rejected that tort liability rises to the level of conscience shocking conduct, holding that the Constitution does not guarantee due care on the part of state officials. *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998).

Courts have focused on two standards that satisfy the "shocks the conscience" test:  (1) intent to harm, and (2) deliberate indifference.  *Lewis*, 523 U.S. at 848-50; *Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006).  The intent to harm standard requires a showing that an official acted "maliciously and sadistically for the very purpose of causing harm." *Lewis*, 523 U.S. at 853.  The deliberate indifference standard requires that a person consciously disregard a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 839 (1994).

Concern for the safety and welfare of inhabitants residing at the River Encampment, cannot be deemed to shock the conscience under any standard. There is no intent to harm; but to act for their safety.  Furthermore, deliberate indifference cannot be established as they are not consciously *disregarding* a substantial risk of harm.  Rather, Pottstown is attempting to prevent injury or death to the River Encampment inhabitants should flooding or fires occur.

### 3.  No Affirmative Act By Pottstown Results in Harm

To satisfy the fourth prong of the state-created danger test, Plaintiffs must show that (1)

11

the state actor exercised his or her authority; (2) the state actor took an affirmative action; and (3) the act either created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all. *Ye v. United States*, 484 F.3d 634, 638-43 (3d Cir. 2007). "[I]t is misuse of authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282.

Addressing this prong, if Pottstown has not yet taken any action; and if it fails to act, the danger to the River Encampment inhabitants could be injury or death from flooding. This is a greater danger than if no action is taken. It cannot be said that the notice to relocate has put the River Encampment inhabitants at a greater risk of danger. The greater danger exists if the River Encampment inhabitants fail to relocate from the Schuykill Riverbanks.

### 2. No Irreparable Harm Exists

Plaintiffs likewise have failed to establish that any irreparable would result from them moving locations to a non-floodway. Even so, as Plaintiffs cannot prove a likelihood of success on the merits, Plaintiffs' request for injunctive relief fails.

### VI. CONCLUSION

For the foregoing reasons and based upon evidence and testimony presented at the hearing, Plaintiffs' Motion for Preliminary Injunction must be denied.

SIANA LAW

By: */s/ Sheryl L. Brown*
Sheryl L. Brown, Esquire, I.D. #59313
Attorneys for Defendant, *Pottstown Borough*
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(P): 610.321.5500  (F): 610.321.0505
slbrown@sianalaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| BETTER DAYS AHEAD OUTREACH, INC., et al., | : : : : | |
| Plaintiffs, | : : | No. 2:23-CV-04234 |
| v. | : : | |
| POTTSTOWN BOROUGH, | : : | JURY TRIAL DEMANDED |
| Defendant. | : : : | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a true and correct copy of Defendant Pottstown Borough's Opposition Brief to Plaintiffs' Brief in Support of Preliminary Injunction was served via ECF as indicated:

Marielle Macher, Esquire
Daniel Vitek, Esquire
Community Justice Project
118 Locust Street
Harrisburg, PA 17101

Carolyn E. Johnson, Esquire
Lisa Whalen, Esquire
Legal Aid of Southeastern PA
151 West Marshall Street, Bldg 1
Norristown, PA 19041

Charles Burrows, Esquire
Erica N. Briant
Legal Aid of Southeastern PA
625 Swede Street
Norristown, PA 19401

**SIANA LAW**

Date: November 15, 2023    By:    */s/ Sheryl L. Brown*
Sheryl L. Brown, Esquire, I.D. #59313
Attorney for Defendant, *Pottstown Borough*
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(P): 610.321.5500  (F): 610.321.0505
slbrown@sianalaw.com

13