IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFREDO BELTRAN; DANIEL WANNER; and BETTER DAYS AHEAD OUTREACH INC.<br><br>    Plaintiffs,<br><br>vs.<br><br>BOROUGH OF POTTSTOWN,<br><br>    Defendant. | Case No. 2:23-cv-04234<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

At the Court's November 16, 2023 hearing on Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs plainly established, principally through Defendant's own admissions, 1) that Defendant Borough of Pottstown is seeking to close the College Drive Encampment under the threat of criminal sanctions, 2) that there is no place within the Borough of Pottstown that unhoused residents can camp without Defendant potentially wielding its criminal enforcement powers, and 3) that there is no alternative shelter available for most, if not all, of the College Drive Encampment residents.  Testimony by Defendant's witnesses also made plain that the impetus for Defendant seeking to close the College Drive Encampment was community complaints, not concern for the safety of the College Drive Encampment residents, and that Defendant has displayed longstanding animus towards unhoused residents and the social services agencies that assist them.  These facts are more than enough to establish Plaintiffs' claims and to obtain a preliminary injunction.  Accordingly, the remainder of this brief will focus on

1

responding to the legal arguments raised by Defendant in its brief filed on November 15, 2023. *See* Dkt. 15.

## II.  ARGUMENT

**A.  Plaintiff Better Days Ahead Outreach Inc. has Organizational Standing.**

First, Plaintiff Better Days Ahead Outreach Inc. ("Better Days Ahead") clearly has organizational standing in this litigation. To establish organizational standing, an organization need only show that the defendant's conduct will 1) frustrate the organization's mission, and 2) require the organization to divert resources. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.").

Contrary to Defendant's bald assertion that organizational standing applies solely to Fair Housing Act claims, it is in fact well-established that the organizational standing test applies broadly to claims of all types. *See, e.g.*, *Pennsylvania Prot. & Advoc., Inc. v. Houston*, 136 F. Supp. 2d 353, 361 (E.D. Pa. 2001) (applying organizational standing test to claims regarding Pennsylvania's implementation of the Medical Assistance program); *Disability Rts. Pennsylvania v. Pennsylvania Dep't of Hum. Servs.*, No. 1:19-CV-737, 2020 WL 1491186, at *5 (M.D. Pa. Mar. 27, 2020) (applying organizational standing test to disability rights claims); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (applying organizational standing test to Administrative Procedures Act claim); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 111 (2d Cir. 2017) (applying organizational standing test to First Amendment claims).

Here, Christopher Brickhouse, the executive director of Plaintiff Better Days Ahead, presented uncontroverted testimony on November 16, 2023 that Defendant's plans to close the College Drive Encampment would frustrate Plaintiff Better Days Ahead's mission of providing supplies to unhoused Southeastern Pennsylvania residents, including the College Drive Encampment residents, and would force Plaintiff Better Days Ahead to divert resources by requiring Plaintiff Better Days Ahead to spend time and energy relocating the residents that it serves. These facts are sufficient to establish organizational standing.

### B. The Preliminary Injunction Should Apply to All College Drive Encampment Residents.

Next, as Plaintiff Better Days Ahead has organizational standing and will be injured by Defendant's plan to close the College Drive Encampment without offering alternative shelter, this Court should issue an order that applies to Defendant's conduct with respect to the College Drive Encampment as a whole. Indeed, without an order applying to the College Drive Encampment as a whole, Plaintiff Better Days Ahead's interest in this litigation, as described above, will go unaddressed.

Moreover, what Plaintiff Better Days Ahead seeks in this litigation—*i.e.*, an injunction prohibiting Defendant from engaging in its proposed unlawful conduct—is relief that is routinely granted to organizational plaintiffs. *See, e.g.*, *Fund for Empowerment v. City of Phoenix*, 646 F. Supp. 3d 1117, 1132 (D. Ariz. 2022) (granting preliminary injunction prohibiting, in part, the City of Phoenix from enforcing camping and sleeping bans against individuals who cannot obtain shelter based on litigation filed by unhoused individuals and a non-profit providing services to the unhoused community); *E. Bay Sanctuary Covenant*, 993 F.3d at 680 (affirming district court's grant of a nationwide preliminary injunction of a proposed asylum policy based on litigation brought by four organizations serving asylum seekers); *Centro de la Comunidad*

*Hispana de Locust Valley*, 868 F.3d at 118 (affirming district court's grant of a permanent injunction striking down a town ordinance in response to litigation filed by organizations serving day laborers).  Contrary to Defendant's assertion, there is nothing limiting encampment-wide injunctive relief to class action litigation.

Nonetheless, in the alternative, if the Court has any concerns with its ability to enjoin Defendant's conduct with respect to the College Drive Encampment as a whole, Plaintiffs would respectfully seek leave to immediately file an amended class action complaint under Federal Rule of Civil Procedure 23(b)(2), with Plaintiff Daniel Wanner as the named plaintiff.  Based on the testimony presented on November 16, 2023, there is no reason that this case cannot proceed as a class under Rule 23(b)(2).[1]

### C. *Monnell* does not Bar Liability in this Case.

Next, Defendant's arguments regarding *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978) are meritless.  *Monell* holds only that local governmental agencies cannot be liable under 42 U.S.C. § 1983 based solely on *respondeat superior* liability.  *Monell*, 436 U.S. at 694.  Instead, local government liability under § 1983 must be based on "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.*

Here, the testimony presented on November 16, 2023 makes crystal clear that all of the steps that Defendant has taken thus far and all that it intends to take on December 1, 2023 and beyond have been pursuant to official Borough of Pottstown policy.  Both of Defendant's two witnesses—Police Chief Michael Markovitch and Borough Manager Justin Keller—testified

---

[1] The Community Justice Project would submit any amended class complaint.  Legal Aid of Southeastern Pennsylvania, as a Legal Services Corporation-funded program, would not participate in any class action litigation.

repeatedly and unequivocally that Defendant's decision to close the College Drive Encampment under threat of criminal sanctions is the Borough's official policy, and that all steps that they and other officials have taken and will take in furtherance of that policy have been or will be at the direction of the Pottstown Borough Council. There is thus no possible basis for dismissing this case under *Monnell*.

### D. Closing the College Drive Encampment under the Threat of Criminal Sanctions Violates the Eighth Amendment.

The testimony presented on November 16, 2023 establishes all elements of Plaintiffs' Eighth Amendment claim. As explained in Plaintiffs' brief in support of Plaintiffs' motion for a preliminary injunction, Dkt. 4-1, the "Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019) (finding that a city ordinance criminalizing sleeping in public violated the Eighth Amendment, where no other sleeping space was practically available to unhoused individuals).

Here, Borough of Pottstown Police Chief Markovitch testified 1) that the Borough of Pottstown Police Department has been threatening the College Drive Encampment residents that it may cite them for criminal trespass if they do not relocate by December 1, 2023; 2) that the Pottstown Police Department will cite the College Drive Encampment residents with criminal trespass after December 1, 2023 if the Pottstown Borough Council instructs it to do so; 3) that Borough of Pottstown ordinances prohibit unhoused individuals from being encamped on all Borough of Pottstown-owned land in the Borough, rendering all unhoused residents on Borough-owned land subject to potential prosecution; and 4) that the Borough of Pottstown has and will enforce criminal trespass laws as to unhoused individuals encamped on private property when requested to do so by the property owner. Mark Boorse of Access Services and Thomas Niarhos

of Beacon of Hope presented further uncontroverted testimony, mostly confirmed by Borough Manager Mr. Keller, that there is no meaningful alternative shelter available to the College Drive Encampment residents. These facts are more than sufficient to establish that, in the absence of a preliminary injunction, Defendant will likely criminally punish the College Drive Encampment residents for engaging in involuntary human activity, *i.e.*, sleeping outside on public property in a tent when they have no other source of shelter, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Whether or not Defendant has already arrested College Drive Encampment residents is beside the point. The Supreme Court has firmly established that "[w]hen an individual is subject to . . . a threat [of law enforcement], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 125 (3d Cir. 2023) (enjoining the district attorney from filing charges against the plaintiff in violation of the First Amendment). Instead, a plaintiff may seek an injunction following "threatened enforcement" that is "sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . ."). Here, Defendant has admitted to threatening imminent criminal prosecution against the College Drive Encampment residents, undoubtedly allowing this Court to issue a preliminary injunction.

### E. Closing the College Drive Encampment in the Winter with no Alternative Shelter Available Violates the State-Created Danger Doctrine under the Fourteenth Amendment.

While not necessary for this Court to issue Plaintiffs' requested preliminary injunction, Plaintiffs have likewise proven their state-created danger doctrine claim under the Fourteenth Amendment. The state-created danger doctrine enables governmental entities to be held liable for affirmatively endangering Plaintiffs when

> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed.

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

#### 1. *Foreseeability*

Here, Plaintiffs have established foreseeability because Borough Manager Mr. Keller testified that, in response to resident complaints, Defendant began making plans to close the College Drive Encampment. He further testified that homeless services agencies advised Defendant that they would be unable to provide shelter to the displaced College Drive Encampment residents, that the residents would have nowhere to go, and that such displacement would be very harmful to the residents by leaving them no place to turn. Despite actual knowledge of the harm Defendant would be inflicting, Defendant chose to go forward with its plan to close the College Drive Encampment under the threat of criminal sanctions anyway.

While Defendant claims that it is taking these steps because the College Drive Encampment is located along the Schuylkill River, testimony delivered on November 16, 2023 greatly undermines this claim. As an initial matter, as noted above, Borough Manager Mr. Keller conceded that Defendant's initial impetus for investigating the College Drive

7

Encampment was resident complaints, not a concern for the College Drive Encampment residents' welfare.

Equally importantly, the uncontroverted testimony of Plaintiffs' witnesses and the admissions of Defendant's own witnesses made plain that the existence of the College Drive Encampment along the Schuylkill River and the lack of alternative shelter for the College Drive Encampment residents is a problem largely of Defendant's own creation. Specifically, Mr. Boorse testified that Defendant pushed unhoused residents out of encampments that were not in the floodway, eventually forcing the College Drive Encampment residents to settle along the Schuylkill River Trail due to lack of meaningful alternatives. Mr. Niarhos likewise testified that Beacon of Hope would like to offer more warming beds than it presently offers, but that it is limited from doing so because Defendant is putting up roadblocks by requiring it to relocate every approximately thirty days to remain open.

Borough Manager Mr. Keller conceded, cynically, that Defendant is indeed voluntarily putting up roadblocks to Beacon of Hope's warming bed program, while at the same time directing College Drive Encampment residents to Beacon of Hope for the same bedspace that Defendant is preventing Beacon of Hope from fully providing. Borough Manager Mr. Keller further acknowledged the Pottstown Borough Council's statement from December 7, 2022 declaring that "our Zoning Ordinance does not permit homeless shelters to operate within the Borough," Dkt. 4-6, and conceded that the Borough Council takes this position because it views unhoused residents negatively and, at least partially, as a burden on the community.

Testimony from Mr. Boorse, Mr. Jason Washington, and Police Chief Markovitch further established that Defendant is not limiting its sweeps to the College Drive Encampment or to encampments in the floodway and, to the contrary, is either sweeping or reserving the right to

sweep homeless encampments located anywhere in the Borough. Indeed, Police Chief Markovitch conceded that Defendant prohibits unhoused residents from being encamped on any Borough-owned land, regardless of whether such land is in a floodway. Mr. Washington's uncontroverted testimony likewise made plain that unhoused residents are being removed even from the Norfolk Southern Railroad-owned property— *the land Defendant states in its own brief is where displaced College Drive Encampment residents should go*. Def.'s Br. at 5, Dkt. 15. These facts, in aggregate, make clear that harm from Defendant's action is foreseeable, and that Defendant is not acting to protect unhoused residents' safety.

      2. *Willful disregard*

Next, Defendant has acted and, absent a preliminary injunction, will continue to act in willful disregard of Plaintiffs' and the College Drive Encampment residents' safety. As Defendant concedes, willful disregard can be established through a showing of "deliberate indifference." *Phillips*, 515 F.3d at 241. A governmental actor "placing homeless people in danger from the elements or lack of adequate services" is sufficient to demonstrate deliberate indifference. *Mary's Kitchen v. City of Orange*, No. 821CV01483DOCJDE, 2021 WL 6103368, at *11 (C.D. Cal. Nov. 2, 2021); *see also Sausalito/Marin Cnty. Chapter of California Homeless Union v. City of Sausalito,* 522 F. Supp. 3d 648, 659 (N.D. Cal. 2021) (enforcing camping ban against unhoused residents "creates a risk to the health and safety" sufficient to demonstrate deliberate indifference); *Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2020 WL 4698800, at *25 (S.D. Ohio Aug. 13, 2020) ("It is self-evident that the City's policy banning people from residing outside with tents or makeshift shelters impacts homeless residents," so as to show intent under the state-created danger doctrine).

9

As explained in Section II(E)(1) above, the evidence presented on November 16, 2023 demonstrates 1) that Defendant carried out sweeps over the last several years that eventually pushed the College Drive Encampment residents to the Schuylkill River Trail, 2) that Defendant has proactively sought to put up roadblocks to Beacon of Hope offering sufficient warming beds, 3) that Defendant is not allowing unhoused Pottstown residents to be encamped anywhere on Borough-owned land, and 4) that Defendant knows that, as the result of its own actions, College Drive Encampment residents will have nowhere else to meaningfully go after Defendant closes the encampment on December 1, 2023 and will thus be at greater risk of exposure to the elements right at the beginning of winter. These facts are more than enough to demonstrate Defendant's deliberate indifference to the College Drive Encampment residents' safety.

Defendant's reliance on *Honkala v. U.S. Department of Housing and Urban Development*, No. CV 21-0684, 2022 WL 282912, at *10 (E.D. Pa. Jan. 31, 2022) is misplaced. In *Honkala*, the Philadelphia Housing Authority ("PHA") sought to evict the plaintiff from a single PHA-owned property that she was occupying. *Id.* at *2-3. The PHA did not, and had no power to make, any threat of criminal sanctions and left open the possibility of the plaintiff moving to other publicly-owned lands.

Here, by contrast, Defendant is affirmatively and deliberately seeking to displace the College Drive Encampment residents in the middle of winter, under the threat of criminal sanctions, while simultaneously putting up roadblocks to unhoused residents receiving warming beds from Beacon of Hope. Moreover, according to Police Chief Markovitch's testimony, Defendant is leaving no alternative land open to the College Drive Encampment residents whatsoever, effectively banishing them from the entire community. Defendant's actions here, in short, go far beyond those in *Honkala*.

3. *Relationship between the state and the plaintiff*

To demonstrate a relationship between the state and the plaintiff, Plaintiffs need only show that "plaintiff was a foreseeable victim, individually or as a member of a distinct class," of Defendant's conduct. *Phillips*, 515 F.3d at 242 (citing *Rivas v. City of Passaic*, 365 F.3d 181, 202 (3d Cir. 2004)). As Defendant does not and cannot contest, Plaintiffs, as unhoused College Drive Encampment residents and an organization serving them, are the foreseeable victims of Defendant's plan to close the College Drive Encampment.

4. *Creation of a danger that would not otherwise have existed.*

Lastly, Plaintiffs have demonstrated that Defendant has placed them in a danger that would not have otherwise existed. To demonstrate that a governmental actor created a danger that would not have otherwise existed, Plaintiffs need only point to an "affirmative act" by Defendant that placed them into additional danger. *Phillips*, 515 F.3d at 236. Here, Defendant is indisputably engaging in the affirmative act of demanding, under the threat of criminal sanctions, that the College Drive Encampment residents relocate with nowhere else to go. Moreover, as described above, the lack of alternative options for the College Drive Encampment residents is largely by Defendant's own design.

As Mr. Boorse testified, Defendant's plan to close the College Drive Encampment will undoubtedly place the College Drive Encampment residents at great risk. Most importantly, with nowhere else to turn, most College Drive Encampment residents will be forced to seek out other outdoor spaces in which they will be even less safe. Defendant's actions will also likely disrupt encampment residents' medical care and make it harder for them to access the necessities of life, such as food, water, and survival supplies. Residents who are separated from their tents and sleeping bags during the winter may also be at immediate risk of exposure to the elements.

Courts have had no difficulty concluding that similar encampment sweeps constitute an affirmative action.[2] *See, e.g.*, *Janosko v. City of Oakland*, No. 3:23-CV-00035-WHO, 2023 WL 187499, at *3 (N.D. Cal. Jan. 13, 2023); *Phillips*, 2020 WL 4698800, at *25. These facts thus establish that Defendant's plan to close the College Drive Encampment, particularly at the beginning of winter, violates the state-created danger doctrine.

### F. Irreparable Harm

Finally, Defendant's sole argument regarding irreparable harm—that the College Drive Encampment residents can avoid irreparable harm by "moving locations to a non-floodway"—was proven wholly false at the Court's hearing on November 16, 2023. Def.'s Br. at 12, Dkt. 15. Police Chief Markovitch's testimony was unequivocal that Defendant's ordinances prohibit unhoused residents from camping on all Borough-owned lands. Likewise, Mr. Washington thoroughly dispelled any notion that the College Drive Encampment residents can simply move to Norfolk Southern Railroad-owned property—the only land offered up as an alternative by Defendant.

On top of this, and as noted above, Mr. Boorse testified at length regarding the threats to survival that unhoused residents suffer during encampment closures, including but not limited to

---

[2] To whatever extent that Defendant may be arguing that there is no affirmative act because Defendant has not yet closed the College Drive Encampment, as explained in Section II(D) above, the law is clear that Plaintiffs need not wait for Defendant to make good on its threats before seeking a preliminary injunction. Defendant's threats to close the College Drive Encampment and to bring trespass citations are enough for this Court to issue a preliminary injunction. *See Susan B. Anthony List*, 573 U.S. at 158; *Schrader*, 74 F.4th at 125.

Moreover, Defendant's reliance on *Honkala* is again misplaced. In *Honkala*, the court held only that the PHA not making one of its properties available to the plaintiff constituted a failure to act rather than an affirmative act. Here, by contrast, Defendant is seeking to close the entire College Drive Encampment under the threat of criminal prosecution, following a long pattern of seeking to disperse unhoused residents and to curtail their access to life sustaining resources. The actions of Defendant here are nothing like those of the PHA's in *Honkala*.

disruptions to medical care, loss of life-sustaining gear such as tents and sleeping bags, being forced to move to less safe locations, and loss of access to necessities such as food and water. These threats to survival undoubtedly constitute irreparable harm.

### III.   CONCLUSION

Plaintiffs respectfully request that this Court issue their requested preliminary injunction.

Respectfully submitted,                                       Date. Nov. 19, 2023

*/s/ Marielle Macher*                                         */s/ Carolyn E. Johnson*
Marielle Macher, Esq.                                         Carolyn E. Johnson, Esq.
Pa. Bar No. 318142                                            Pa. Bar. No. 49188
Daniel Vitek, Esq.                                            Charles Burrows, Esq.
Pa. Bar No. 209013                                            Pa. Bar No. 331591
Community Justice Project                                     Lisa Whalen, Esq.
118 Locust Street                                             Pa. Bar No. 323530
Harrisburg, PA 17101                                          Legal Aid of Southeastern PA
mmacher@cjplaw.org                                            151 West Marshall Street, Building 1
dvitek@cjplaw.org                                             Norristown, PA 19041
717-236-9486 x 214                                            cjohnson@lasp.org
                                                              cburrows@lasp.org
                                                              lwhalen@lasp.org
                                                              877-429-5994

## **CERTIFICATE OF SERVICE**

I, Marielle Macher, Esq. hereby certify that a true and correct copy of the foregoing Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for a Preliminary Injunction was e-mailed to all counsel of record via the Court's ECF filing system.

Date: Nov. 19, 2023                     /s/ *Marielle Macher*_____
                                                                             Marielle Macher, Esq.
                                                                             PA Bar No. 318142
                                                                             Community Justice Project
                                                                             118 Locust Street
                                                                             Harrisburg, PA  17101
                                                                             (717) 236-9486
                                                                             mmacher@cjplaw.org

                                                                             *Plaintiffs' Counsel*