IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFREDO BELTRAN; DANIEL WANNER; on behalf of himself and those similarly-situated; and BETTER DAYS AHEAD OUTREACH INC. | : : : : : |
| | Case No. 2:23-cv-04234 |
| Plaintiffs, | : : JURY TRIAL DEMANDED |
| vs. | : : : |
| BOROUGH OF POTTSTOWN, | : |
| Defendant. | |

## SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Alfredo Beltran and Daniel Wanner (together, "Unhoused Plaintiffs") are unhoused Pottstown residents who lived or are living in a homeless encampment on Borough of Pottstown-owned land next to the Schuylkill River Trail along College Drive, Pottstown, PA (the "College Drive Encampment"). Plaintiff Better Days Ahead Outreach Inc. is a non-profit organization that provides aid to unhoused residents in Pottstown, including residents of the College Drive Encampment. Plaintiffs bring this suit for declaratory and injunctive relief to enjoin Defendant Borough of Pottstown from conducting a sweep of the College Drive Encampment in violation of Plaintiffs' rights under the Eighth Amendment to the United States Constitution and from interfering with Plaintiffs' and the Plaintiff class's right to travel under the Fourteenth Amendment to the United States Constitution.

### I.     JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' constitutional claims under 42 U.S.C. § 1983 claims is proper under 28 U.S.C. § 1331.

1

2. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to this claim occurred in this district.

## II.   PARTIES

3. Plaintiff Alfredo Beltran is an unhoused Borough of Pottstown resident who resided at the College Drive Encampment.

4. Plaintiff Daniel Wanner is an unhoused Borough of Pottstown resident residing at the College Drive Encampment.

5. Plaintiff Better Days Ahead Outreach Inc. ("Better Days Ahead") is a non-profit organization organized under the laws of Pennsylvania. Plaintiff Better Days Ahead's mission is to aid unhoused residents in Pottstown and other Southeastern PA municipalities, including by distributing food and supplies to unhoused residents at the College Drive Encampment.

6. Defendant Borough of Pottstown is a municipal governmental agency established and operating under the laws of Pennsylvania. At all times relevant to this action, Defendant Borough of Pottstown acted pursuant to its elected and appointed officials, who acted under the color of state law.

## III.   FACTS

**BACKGROUND ON HOMELESSNESS IN THE BOROUGH OF POTTSTOWN**

7. Inflation in the wake of the COVID-19 pandemic and other factors have spawned an affordable housing crisis in the Borough of Pottstown and throughout Montgomery County and Southeastern Pennsylvania.

8. This affordable housing crisis and other factors have caused an increase in homelessness in Montgomery County, Pennsylvania, with a large portion of Montgomery County's unhoused population residing in the Borough of Pottstown.

9. Specifically, according to data collected by Montgomery County, approximately 568 people were unhoused in Montgomery County during its January 2022 point-in-time count—more than double the number of unhoused people that it counted in January 2021.

10. While the point-in-time count number decreased to 329 unhoused people in January 2023, that number is still higher than the number of unhoused people counted in Montgomery County from 2017 to 2021.

11. During the January 2023 point-in-time count, Montgomery County located approximately forty-one (41) unhoused residents living outside in the Borough of Pottstown. This figure does not include unhoused Pottstown residents who found emergency or other shelter on the night of the count.

12. According to estimates by non-profits serving the Borough of Pottstown unhoused community, approximately seventy-five (75) to ninety-five (95) unhoused residents in total live in the Borough of Pottstown.

13. The Borough of Pottstown and Montgomery County more broadly do not have enough shelter beds to house the Borough of Pottstown's unhoused residents.

14. Specifically, in June 2022, the Coordinated Homeless Outreach Center in Norristown— the only year-round homeless shelter for single adults in all of Montgomery County— closed, eliminating the primary shelter option for most Montgomery County unhoused residents.

15. Beacon of Hope, a church-based warming center program in the Borough of Pottstown, offers up to thirty-five (35) warming center beds on a first-come, first-served basis from November 1 to May 1 each year, but these beds are not nearly enough to meet the need for overnight beds in the Pottstown community.

16. From December 2022 to March 2023, Beacon of Hope typically had to turn away three to eight unhoused people each night, except during the extreme cold, defined as nights with a temperature, including wind-chill factor, of 20°F or below, in which case additional beds become available through Montgomery County's Code Blue program.

17. While Montgomery County provides a small number of hotel rooms to unhoused residents, the program is at capacity right now with a waitlist of approximately three to six months, depending on the unhoused resident's vulnerability factors.

18. As a result of these very limited shelter options, most unhoused Borough of Pottstown residents have no choice but to sleep outside.

19. Although unhoused residents generally have no choice but to sleep outside, the Borough of Pottstown has taken an increasingly aggressive stance towards unhoused residents over the past two years.

20. The Pottstown Police Department ("Pottstown PD"), which is part of Defendant Borough of Pottstown, has repeatedly conducted sweeps of homeless encampments in the Borough of Pottstown over the past two years.

21. During these sweeps, Defendant Borough of Pottstown, via the Pottstown PD, has ordered unhoused residents to relocate with limited notice and without any offer of alternative housing, typically forcing residents to relocate to other, less safe outdoor spaces.

22. During past sweeps, Defendant Borough of Pottstown also failed to store unhoused residents' property, resulting in residents' property being destroyed or damaged. Loss of property is especially harmful to unhoused residents, because unhoused residents depend on their limited property, such as tents, bedding, clothing, and stoves, to stay warm and sheltered from the elements.

23. These past sweeps have been pursuant to official Borough of Pottstown practice, policy, and custom.

24. Specifically, Defendant Borough of Pottstown takes the position that being encamped on any Borough-owned property constitutes criminal trespass and/or defiant trespass.

25. When instructed to do so by the Pottstown Borough Council, the Pottstown PD will thus remove unhoused people from Borough-owned land under the threat of criminal sanctions.

26. The Pottstown PD will also remove unhoused people from private land under the threat of criminal sanctions when requested to do so by private property owners.

27. This leaves no land in the Borough of Pottstown on which unhoused people may be encamped without the threat of possible criminal enforcement.

28. At the same time that Defendant Borough of Pottstown has taken an increasingly aggressive stance towards its unhoused residents, Defendant Borough of Pottstown has also sought to block or impede Beacon of Hope, a church-based overnight warming center program, from providing overnight beds to unhoused residents.

29. For instance, in 2022, the Borough of Pottstown issued a cease and desist letter to Beacon of Hope, demanding that it stop providing overnight beds to the unhoused community.

30. In defense of this position, the Borough of Pottstown issued a press release on December 7, 2022, stating that its "Zoning Ordinance does not permit homeless shelters to operate within the Borough."  The press release further states that "[w]e are already seeing an influx of homeless individuals from outside the region who, by their own admission, come here because this is where the services <u>are</u> located.  They are leaving the places where the services <u>are not</u>."

31. The Borough of Pottstown's attempt to thwart Beacon of Hope's warming center program is expected to further reduce warming beds available during part of the December 2023 to March 2024 cold weather season.

32. Specifically, Beacon of Hope, which ordinarily attempts to make thirty-five (35) warming beds available from November 1 to May 1, will need to rotate each month among five different churches during the 2023 to 2024 shelter season to avoid the Borough of Pottstown demanding that the program shut down.

33. As the result of needing to rotate among five different churches, Beacon of Hope will be based out of a church in January 2024—one of the coldest seasons of the year—that will have only up to twenty-seven (27) beds available rather than the usual thirty-five (35).

**COLLEGE DRIVE ENCAMPMENT**

34. Due to the lack of affordable housing or emergency shelter, approximately twenty-five (25) unhoused Pottstown residents, including Unhoused Plaintiff Mr. Wanner, lived at the College Drive Encampment, located on Borough of Pottstown-owned land adjacent to the Schuylkill River Trail, as of early November 2023.

35. Being together at the College Drive Encampment provides residents of the encampment with safety, mutual support, and access to life-sustaining social services.

36. In or around August 2023, the Borough of Pottstown, via the Pottstown PD, informed Access Services, a social services agency that provides assistance to unhoused residents in Pottstown, that the Pottstown PD would be closing the College Drive Encampment, and that all unhoused residents at the encampment would need to relocate.

37. The Pottstown PD, via the Police Chief, further informed Access Services that it would be warning unhoused residents that they may be arrested for trespass if they stay at the College Drive Encampment after its closure. The Police Chief had final policy-making authority and/or authority to speak for Defendant on this issue.

38. On September 28, 2023, Officer Guth of the Pottstown PD informed Access Services and Plaintiff Mr. Beltran that Defendant Borough of Pottstown would be closing the College Drive Encampment in or around November or December 2023.

39. Officer Guth stated that the reason that Defendant Borough of Pottstown would be closing the College Drive Encampment was to clear trees from Borough of Pottstown-owned land along the Schuylkill River Trail and to plant grass instead.

40. Officer Guth made no offer of alternative housing to Mr. Beltran, instead encouraging him to relocate to private property or other outdoor spaces owned by entities other than Defendant.

41. On or around October 2, 2023, Defendant Borough of Pottstown, via its Borough Manager, informed Access Services and Beacon of Hope during a meeting that it would close the College Drive Encampment in or around December 2023.

42. During the October 2, 2023 meeting, Defendant Borough of Pottstown requested that Access Services and Beacon of Hope help the College Drive Encampment residents to find alternative housing.

43. Representatives of Access Services and Beacon of Hope explained to Defendant Borough of Pottstown that this would be impossible because there is not adequate shelter space available to shelter all of the College Drive Encampment residents.

44. Defendant Borough of Pottstown further asked Beacon of Hope to prioritize displaced College Drive Encampment residents for its warming bed program.

45. Beacon of Hope explained that it could not prioritize displaced College Drive Encampment residents because doing so would prevent other unhoused residents from receiving shelter.

46. Defendant Borough of Pottstown, via its Borough Manager, indicated that it would go forward with the College Drive Encampment closure anyway. Defendant's Borough Manager had final policy-making authority and/or authority to speak for Defendant on this issue.

47. In October 2023, Defendant Borough of Pottstown put up yellow signs close to the College Drive Encampment, warning College Drive Encampment residents that "[y]ou are NOT permitted to enter or use this property . . . for any reason . . . such as to erect a tent, encampment or other structure, or to otherwise live, sleep, stay or store belongings on this property after December 1, 2023." Defendant Borough of Pottstown put up these yellow signs, at the direction of Defendant's Borough Council and/or Borough Manager, pursuant to its official practice, policy, and custom. The Borough Council and/or Borough Manager had policy-making authority on putting up the signs.

48. The yellow signs also state "NO TRESPASSING."

49. The yellow signs instruct College Drive Encampment residents to call 211 or the Montgomery County Mobile Crisis "[i]f [they] need help finding alternative shelter."

   The signs also state that Beacon of Hope will have shelter spaces available beginning November 1, 2023.

50. Although the yellow signs imply that alternative shelter is available to College Drive Encampment residents, the reality is that Defendant Borough of Pottstown is not making shelter available.

51. Specifically, dialing 211 connects callers to a call center for Montgomery County residents experiencing homelessness.

52. As explained further below, however, the providers of the 211 system cannot connect callers to shelter right now because there is no year-round shelter for single adults in Montgomery County, and there is a waitlist of approximately three to six months for hotel beds, depending on the unhoused resident's particular vulnerability factors.

53. Likewise, as described above, Beacon of Hope does not have sufficient capacity to offer overnight warming beds to all of the College Drive Encampment residents, and it did not consent to the Borough of Pottstown listing it on the signs.

54. Beacon of Hope's warming bed program is also first-come, first-served each night, which means that unhoused residents who obtain a bed one night may not receive a bed the next night.

55. Requiring unhoused residents to rely solely on Beacon of Hope's warming beds thus places unhoused residents in the precarious position of leaving their encampments without a guarantee of an indoor bed each night during the winter.

56. Following Defendant Borough of Pottstown's announcement of its plan to close the College Drive Encampment, the Pottstown PD, pursuant to Defendant Borough of Pottstown's official practice, policy, and custom, began threatening to cite College Drive

Encampment residents for criminal trespass if they remain at the encampment after December 1, 2023.

57. Should the Pottstown Borough Council instruct it to do so, the Police Chief of the Pottstown PD testified that the Pottstown PD would begin issuing criminal citations to College Drive Encampment residents after December 1, 2023.

58. As there is not adequate shelter for all of the College Drive Encampment residents, Defendant Borough of Pottstown's demand that College Drive Encampment residents relocate, under the threat of criminal sanctions, means that some or all will be forced to relocate to other outdoor spaces, as Office Guth explicitly recommended to Plaintiff Mr. Beltran.

59. Forcing Unhoused Plaintiffs and other College Drive Encampment residents to relocate to other outdoor spaces will strip the College Drive Encampment residents of the security and mutual support that they achieve by being together at the College Drive Encampment and will threaten their health and safety.

**BACKGROUND ON PLAINTIFFS**

**Plaintiff Alfredo Beltran**

60. Plaintiff Alfredo Beltran became unhoused in or around 2022 and began living at the College Drive Encampment in or around 2023.

61. Following Defendant Borough of Pottstown's announcement of its plan to close the College Drive Encampment under the threat of criminal sanctions, Mr. Beltran moved farther down the Schuylkill River Trail into West Pottsgrove Township.

62. However, Mr. Beltran's status in West Pottsgrove Township is not necessarily stabile either, and he may return to the Borough of Pottstown.

63. In fact, prior to living at the College Drive Encampment, the Pottstown PD ordered Mr. Beltran to relocate from at least one other encampment. Mr. Beltran was also ordered to relocate from another location in West Pottsgrove Township.

64. These relocations were difficult for Mr. Beltran because many of his belongings were damaged in the process, and he had to find somewhere else to live.

**Plaintiff Daniel Wanner**

65. Plaintiff Daniel Wanner became unhoused in or around November 2022 and has been living at the College Drive Encampment since in or around the summer of 2023.

66. Mr. Wanner cannot afford housing because he has a disability that prevents him from working.

67. Mr. Wanner was previously ordered to relocate twice from in or around the site of the former Stanley G. Flagg Co. property, located along the border of Pottstown and West Pottsgrove Township.

68. Mr. Wanner struggled to move his property during these past relocations and lost many of his belongings in the process.

69. Since living at the College Drive Encampment, Mr. Wanner has also been told by an officer of the Pottstown PD that he will be subject to criminal sanctions if he does not leave the encampment.

70. After Defendant Borough of Pottstown announced its plan to close the College Drive Encampment, Mr. Wanner called 211 for help obtaining shelter, per the instructions on Defendant's yellow signs.

71. The 211 call-in center had no emergency shelter available to offer to Mr. Wanner.

72. If Mr. Wanner is ordered to relocate from the College Drive Encampment, he will likely need to find another outdoor space in which to live because he cannot afford housing and there is no long-term emergency shelter available to him right now.

73. If Defendant Borough of Pottstown closes the College Drive Encampment, Mr. Wanner will be at greater risk of crime and will lose the support he receives from other unhoused people at the encampment. He will also be farther from social services that he needs to survive.

74. At the College Drive Encampment, Mr. Wanner has his tent, clothes, bedding, and family photographs.

75. Mr. Wanner fears that he will be separated from some or all of his property if he is forced to relocate.

76. Mr. Wanner needs his tent to stay sheltered. If his tent is taken away, he will be unprotected from the elements, including rain and cold weather.

77. Mr. Wanner also needs his bedding to have a place to sleep and clothing so that he can change his clothing and stay clean.

**Plaintiff Better Days Ahead**

78. Plaintiff Better Days Ahead is a non-profit organization with a mission of aiding unhoused residents in Pottstown and other Southeastern PA municipalities, including by distributing food and supplies to unhoused residents at the College Drive Encampment.

79. Volunteers from Plaintiff Better Days Ahead visit the College Drive Encampment approximately twice per month to distribute food, tents, clothing, and other critical supplies to College Drive Encampment residents.

80. Per Plaintiff Better Days Ahead's estimate, approximately half of unhoused Pottstown residents rely on tents that Plaintiff Better Days Ahead supplied to them to stay sheltered.

81. Past sweeps by Southeastern Pennsylvania municipalities have frustrated Plaintiff Better Days Ahead's mission by making it more difficult for Plaintiff Better Days Ahead to locate and to provide life-sustaining resources to the unhoused residents that it serves.

82. Past sweeps by Southeastern Pennsylvania municipalities also required Plaintiff Better Days Ahead to divert resources by forcing Plaintiff Better Days Ahead to supply unhoused residents subject to the sweeps with new tents.

83. Past sweeps by Southeastern Pennsylvania municipalities also required Plaintiff Better Days Ahead to divert resources by forcing Plaintiff Better Days Ahead to spend time and energy finding where the residents they serve went after the sweep.

84. If Defendant Borough of Pottstown conducted a sweep of the College Drive Encampment under the threat of criminal sanctions, it would similarly frustrate Plaintiff Better Days Ahead's mission by making it more difficult for Plaintiff Better Days Ahead to locate and serve the residents of the College Drive Encampment.

85. It would also require Plaintiff Better Days Ahead to divert resources by forcing Plaintiff Better Days Ahead to distribute new tents to College Drive Encampment residents and to spend time and energy locating where the College Drive Encampment residents went after the sweep.

## IV.   CLASS ALLEGATIONS

86. Unhoused Plaintiff Mr. Wanner and the Plaintiff class bring this class action under Federal Rule of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and the following Class of similarly-situated residents:

> "*All current and future individuals in the Borough of Pottstown who are, or who will become, unhoused and living outside.*"

87. There are over forty members of the Class. As such, joinder of all members of the Class is impractical.

88. The proposed class representative at this time is Unhoused Plaintiff Mr. Wanner.

89. There are questions of law and fact common to the Class. Common questions of law and fact include, but are not limited to, whether Defendant's official practice, policy, and custom that being encamped on any Borough-owned property constitutes criminal trespass and/or defiant trespass, and whether Defendant's attempt to restrict social services to unhoused residents, impedes the right to travel in violation of the Fourteenth Amendment to the U.S. Constitution.

90. The claim of the named Plaintiff is typical of the claims of the Class in that, for all members of the Class, Defendant's conduct, actions, and omissions have resulted in, or will result in, the same types of injuries and the declaratory and injunctive relief requests will apply across all class members equally.

91. The representative Plaintiff will fairly and adequately protect the interests of the Class. The representative Plaintiff has no interests antagonistic to those of the Class.

92. Class counsel, who have extensive experience in housing and class action litigation, will adequately and zealously prosecute this action and have the financial resources necessary to assure that the interests of the Class will not be harmed.

93. Defendant has acted or refused to act on grounds that apply generally to the Class, so final injunctive relief and declaratory relief is appropriate respecting the Class as a whole.

## V.   CLAIMS FOR RELIEF

### COUNT ONE:
### Cruel and Unusual Punishment as to Plaintiffs
### (42 U.S.C. § 1983 and Eighth Amendment to the U.S. Constitution)

94. Plaintiffs incorporate all previous paragraphs and allegations as if fully rewritten herein.

95. Whether to shelter oneself is not an option. Shelter and protection from the elements are basic human needs. Creating one's own structure and protecting oneself from the elements is an act inextricably linked to homelessness.

96. As described in Paragraphs 36-50 above, Defendant Borough of Pottstown, pursuant to official practice, policy, and custom, is threatening to issue criminal citations to College Drive Encampment residents who remain at the encampment after December 1, 2023.

97. It is cruel and unusual for Defendant to punish or threaten to punish citizens based on them engaging in unavoidable human activity, such as sleeping. This is particularly true given that the majority of unhoused residents in the Borough of Pottstown cannot obtain shelter space anywhere in Montgomery County right now, as described in Paragraphs 51-58 above.

98. Without the injunctive relief sought, Unhoused Plaintiffs will be subject to cruel and unusual punishment in violation of the Eighth Amendment by Defendant Borough of Pottstown.

99. Defendant Borough of Pottstown's violation of the Eighth Amendment right to be free from cruel and unusual punishment would frustrate Plaintiff Better Days Ahead's mission and force it to divert its resources, as described in Paragraphs 78-85 above.

## COUNT TWO:
### Interference with the Due Process Clause Right to Travel as to Plaintiffs and the Plaintiff Class
### (42 U.S.C. § 1983 and Eighth Amendment to the U.S. Constitution)

100. Plaintiffs incorporate all previous paragraphs and allegations as if fully rewritten herein.

101. Unhoused Plaintiffs and the Plaintiff Class have a right to engage in intrastate travel under the Due Process Clause of the Fourteenth Amendment.

102. As set forth in Paragraph 24 above, Defendant, pursuant to official practice, policy, and custom, takes the position that being encamped on any Borough-owned property constitutes criminal trespass and/or defiant trespass.

103. As set forth in Paragraph 26 above, Defendant, pursuant to official practice, policy, and custom, will also remove unhoused people from private land under the threat of criminal sanctions when requested to do so by private property owners.

104. As set forth in Paragraph 27 above, this leaves no land in the Borough of Pottstown on which unhoused people may be encamped without the threat of possible criminal enforcement.

105. Defendant's effective prohibition on encampments throughout the Borough of Pottstown, particularly under the threat of criminal enforcement, interferes with Unhoused Plaintiffs' and the Plaintiff class's right to travel.

106. As set forth in Paragraphs 28-33 above, Defendant has also sought to limit Beacon of Hope's ability to provide life-sustaining warming beds to unhoused residents.

107. As set forth in Paragraph 30 above, according to Defendant's own press release, Defendant seeks to impede Beacon of Hope's operation, at least in part, because it believes "[w]e are already seeing an influx of homeless individuals from outside the

16

region who, by their own admission, come here because this is where the services <u>are</u> located. They are leaving the places where the services <u>are not</u>."

108. Defendant's attempt to restrict social services in the Borough of Pottstown so as to impede unhoused residents from residing in the Borough of Pottstown operates as a further burden on the right to travel.

109. Without the injunctive relief sought, Defendant will continue to impede Unhoused Plaintiffs' and the Plaintiff class's right to travel, in violation of the Due Process Clause of the Fourteenth Amendment.

110. Defendant Borough of Pottstown's violation of the Fourteenth Amendment right to travel would frustrate Plaintiff Better Days Ahead's mission and force it to divert its resources, as described in Paragraphs 78-85 above.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

    a. Certify the proposed class as a class action;

    b. Declare that Defendant's plan to close the College Drive Encampment, under the threat of criminal enforcement, violates the Eighth Amendment of the U.S. Constitution;

    c. Declare that Defendant's actions unlawfully impede the Due Process Clause right to travel, in violation of the Fourteenth Amendment of the U.S. Constitution;

    d. Provide an injunction prohibiting Defendant from closing or sweeping the College Drive Encampment under the threat of criminal enforcement,

       unless and until Defendant makes an adequate offer of shelter to the College Drive Encampment residents;

e. Provide an injunction prohibiting Defendant from interfering with Plaintiffs' and the Plaintiff class's right to travel;

f. Award reasonable attorneys' fees and costs; and

g. Award such other legal and equitable relief this court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury for all issues so triable as of right.

Respectfully submitted,

*/s/ Marielle Macher*                                                                         Date: Feb. 26, 2024
Marielle Macher, Esq.
Pa. Bar No. 318142
Daniel Vitek, Esq.
Pa. Bar No. 209013
Community Justice Project
118 Locust Street
Harrisburg, PA 17101
mmacher@cjplaw.org
dvitek@cjplaw.org
717-236-9486 x 214